

3100 Ocean Park Boulevard
Santa Monica, California 90405
Tel: 310.255.2000
Fax: 310.255.2152
www.activision.com

| | |
|---|---|
| Party: | CBGB Holdings, LLC |
| Activision Products: | Guitar Hero 6 (tentative/working title) |
| Deal Type: | Trademark License |

## TRADEMARK AGREEMENT

This Trademark Agreement (this "**Agreement**") is entered into as of September 2, 2009 (the "**Effective Date**"), by and between CBGB Holdings, LLC c/o Carroll, Guido & Groffman LLP, 1790 Broadway, 20th Floor, New York, NY 10019, Attn: Michael Guido, Esq. ("**Licensor**"), and Activision Publishing, Inc. and its affiliates (collectively, "**Activision**"), with offices at 3100 Ocean Park Boulevard, Santa Monica, California 90405.

1. **DEFINITIONS**

1.1 "**Activision Products**" shall mean Activision's interactive software product with the working/tentative title "Guitar Hero 6", including all versions developed for play, distribution, or use on or via any platforms, systems, devices, or media (including online), whether now existing or hereafter created, and any enhancements, updates, patches, hint books, or strategy guides thereto (but not including any sequels). The Activision Products shall be limited to the Guitar Hero 6 game only (all versions thereof), and shall not include add-on content (including downloadable add-on content).

1.2 "**Licensed Property**" shall mean Licensor's "CBGB" name and logo, and associated names, trademarks, logos, property, trade dress, interior and exterior of the CBGB building(s) (current and historic). The Licensed Property shall also include any other materials provided to Activision by Licensor, at Licensor's sole discretion.

2. **GRANT OF RIGHTS**

Licensor hereby grants to Activision the perpetual, worldwide, non-exclusive, royalty free, paid in full, right and license solely to: (a) incorporate the Licensed Property into the Activision Products; and (b) reproduce, display, transmit, perform, broadcast and otherwise use the Licensed Property in and in connection with the advertising and promotion of the Activision Products, including use of the Licensed Property in videos, trailers, commercials, and demos.

3. **FEE**

In exchange for the rights granted herein, Activision shall pay to Licensor a one-time flat fee payment of **$30,000** upon the mutual execution of this Agreement. Licensor acknowledges that no royalties or other payments shall be due from Activision based on any sales or other exploitation of the Activision Products containing the Licensed Property.

4. **USE AND APPROVAL**

4.1 <u>Licensor Approvals</u>. The Licensed Property as it appears in or on the Activision Products is subject to the prior written approval of Licensor, not to be unreasonably withheld. The appearance of the Licensed Property in or on the Activision Products will be submitted to Licensor in a format accurately portraying such appearance. This process will not constitute an evaluation by Licensor of Activision's design, gameplay elements or content other than the Licensed Property. Licensor shall approve or disapprove each submission within ten (10) days of receiving each submission. If Licensor fails to respond within such ten (10) day period, such submission will be deemed approved. For any submission disapproved by Licensor, Licensor will provide written instructions for making the submission acceptable. The above process will be

repeated until such time as the appearance is approved by Licensor, provided that the applicable approval period for resubmission is five (5) days from receipt.

4.2 <u>In Game Appearance</u>. The use of the Licensed Property in the Activision Products shall not materially differ from the prior approved uses. Licensor acknowledges however that the fidelity of reproduction of the Licensed Property is subject to commercial and technical limitations, and that the Licensed Property may be manipulated or changed as part of the in-game experience, whether caused by scripted game-code events or by actions taken by a game player. Similarly, in-game environment conditions (lighting, color temperature, etc.) are dynamic and may differ from approved representations, and may differ by each gaming platform or medium.

4.3 <u>Prior Approvals, Use of In-Game Materials</u>. Approval of uses of previously-approved depictions of the Licensed Property in advertising or promotional materials, or in other game versions of the Activision Products, shall not be required (e.g., screen shots, print advertisements, PR materials, promotional videos, different platform ports of the Activision Products, etc.), provided that such uses do not materially differ from the previously-approved uses.

## 5. OWNERSHIP

The Activision Products, as well as all copyrights, trademarks, service marks, trade names, logos and other intellectual property and proprietary rights created, developed and used by Activision in connection with the development, advertising, marketing, promotion, distribution and sale of the Activision Products, other than the Licensed Property, shall be the sole and exclusive property of Activision (or, as the case may be, Activision's licensors). Licensor shall not acquire any rights in or to the Activision Products as a result of Activision's use of the Licensed Property in connection therewith.

## 6. CONFIDENTIALITY

Any information, records, documents, descriptions or other disclosures of whatsoever nature or kind which are made or disclosed by one party to the other, or are learned or discovered by a party in the course of performing its obligations under this Agreement and not known by or available to the public at large, including the terms of this Agreement, shall be received by such party in confidence. Such party shall not disclose or make use of any such information nor shall it authorize anyone else to make use thereof without the prior written consent of the other party, unless required by law. Neither party shall have any confidentiality obligation with regard to any information independently developed by such party.

## 7. TERM AND TERMINATION

7.1 The "**Term**" of this Agreement shall be perpetual (and in no event less than the commercial life of the Activision Products). In the event of any breach or alleged breach of this Agreement or any portion thereof by Activision, Licensor's sole remedy shall be an action at law for damages actually suffered. In no event shall Licensor have the right to terminate or rescind the rights granted to Activision hereunder, or to enjoin or restrain or otherwise interfere with the development, creation, advertising, marketing, promotion, sale, distribution, exhibition or other exploitation of the Activision Products.

7.2 If, notwithstanding the foregoing, Licensor is permitted to terminate this Agreement (i.e., by a court of competent jurisdiction), then: (i) such termination shall not affect the rights of end users of the Activision Products distributed pursuant to this Agreement, nor the rights of any other purchaser of the Activision Products; and (ii) following such termination, Activision shall have no obligation to repurchase units of the Activision Products sold into distribution during the Term hereof and may continue to distribute already manufactured units of the Activision Products and fulfill existing orders for units of the Activision Products until such time as the supply of such units of the Activision Products is exhausted and all such orders are fulfilled.

## 8. REPRESENTATIONS AND WARRANTIES

8.1 <u>By Activision</u>. Activision represents and warrants that:

8.1.1 Activision has all necessary right, power and authority and is free to enter into and fully perform its obligations under this Agreement, without approval from any governmental entity or third party other than as has been or, if later required or imposed, will be obtained;

8.1.2 Activision's distribution, promotion, development, and exploitation of the Activision Products will not infringe upon the intellectual property rights, including copyright and trademark rights, of any third party; and

8.1.3 Activision will comply with all applicable laws and governmental regulations in fulfilling its obligations under this Agreement.

8.2 By Licensor. Licensor represents and warrants that:

8.2.1 Licensor has all necessary right, power and authority and is free to enter into and fully perform its obligations under this Agreement, without approval from any governmental entity or third party other than as has been or, if later required or imposed, will be obtained;

8.2.2 Licensor will comply with all applicable laws and governmental regulations in fulfilling its obligations under this Agreement; and

8.2.3 Licensor is the sole owner of the Licensed Property and all intellectual property rights related thereto, or has procured all necessary rights and licenses from the owners of such rights to enter into and carry out the terms of this Agreement, and Activision's use thereof as set forth in this Agreement will not infringe upon the intellectual property rights, including copyright and trademark rights, of any third party.

## 9. INDEMNIFICATION

Each party shall indemnify, defend and hold harmless the other party and its affiliates and each of their officers, directors, agents and employees from third party claims, suits, losses, liabilities, damages or expenses (including costs of suit and attorneys' fees) (collectively, "**Claims**") arising out of the indemnifying party's breach of this Agreement or any representations or warranties contained herein.

## 10. ASSIGNMENT

Either party may assign this Agreement to its parents and majority-owned subsidiaries or to any third party that either (a) succeeds it by operation of law, or (b) merges or combines with, purchases or otherwise acquires at least a majority of its assets or voting equity, and, in either event, assumes its obligations under this Agreement. Any other attempted assignment shall be null and void unless made pursuant to the prior written consent of the other party.

## 11. GENERAL

The validity, interpretation and performance of this Agreement shall be controlled by and construed under the laws of the State of New York applicable to contracts made and fully performed in New York. Should any litigation be commenced among the parties in relation to this Agreement, the party prevailing in such litigation shall be entitled, in addition to such other relief as may be granted, to a reasonable sum for attorneys' fees in connection with such litigation or in a separate action brought for that purpose. If any provision of this Agreement is or becomes or is deemed invalid, illegal or unenforceable under the applicable laws or regulations of any jurisdiction, either such provision will be deemed amended to conform to such laws or regulations without materially altering the intentions of the parties and enforced accordingly or it shall be stricken and the remainder of this Agreement shall remain in full force and effect. This Agreement constitutes the entire agreement between the parties concerning the subject matter hereof and supersedes any prior agreement between the parties and can only be amended by a writing signed by both parties.

**ACCEPTED AND AGREED TO:**

***ACTIVISION PUBLISHING, INC.***

By: [signature]

Name: Greg Deutsch

Title: Sr. Vice President and General Counsel

**CBGB HOLDINGS, LLC**

By: [signature]

Name: JAMES BUEWISS

Title: CEO