# SURRENDER OF COLLATERAL,
# CONSENT TO STRICT FORECLOSURE,
# AND RELEASE AGREEMENT

THIS SURRENDER OF COLLATERAL, CONSENT TO STRICT FORECLOSURE, AND RELEASE AGREEMENT (the "Agreement") is entered into as of February 12, 2010 (the "Effective Date") by and between the Estate of Hillel Kristal ("Secured Party"), and CBGB HOLDINGS LLC ("Debtor") (collectively, the "Parties").

WHEREAS, as of May 12, 2008, the Parties entered into an Asset Purchase Agreement and related documents, including without limitation, the Promissory Note, the IP Security Agreement, the Tangible Assets Security Agreement, and the Escrow Agreement (collectively, the "Transaction Agreements"); and

WHEREAS, the Promissory Note was Amended and Restated on or about July, 2009 (the "Note"); and

WHEREAS, the Note requires Debtor to pay the Secured Party the principal amount of TWO MILLION THREE HUNDRED AND EIGHTY SEVEN THOUSAND FIVE HUNDRED DOLLARS ($2,387,500.00); and

WHEREAS, the Note additionally requires the payment of principal and interest, as set forth in the Note; and

WHEREAS, the Debtor made a payment of $9947.92 in interest and missed a payment of principal under the Note which was due and payable on February 12, 2010 (the "Default"); and

WHEREAS, Debtor received a notice of the Default from the Secured Party on or about February 24, 2010; and

WHEREAS, the Secured Party has duly accelerated Debtor's obligations under the Note, and the debt evidenced by the Note is now fully due and payable; and

WHEREAS, the Secured Party has agreed to forbear and refrain from exercising such Secured Party's rights and remedies under the Transaction Documents for a period of time ending on the expiration of the Compliance Period (as defined below); and

WHEREAS, the Parties desire to provide for the orderly and final transfer to the Secured Party of all of the Collateral as defined by the Security Agreements if, and in the event that Debtor does not satisfy its obligations under the Note by the expiration of the Compliance Period, or if applicable, the Extended Compliance Period; then

NOW, THEREFORE, based upon the agreed upon facts set forth above, which are incorporated herein, and the mutual promises contained herein, the Parties agree as follows:

1.      Acknowledgment of Default. Debtor acknowledges that it is in default under the Transaction Agreements and is indebted to Secured Party in the principal amount of TWO MILLION THREE HUNDRED AND EIGHTY SEVEN THOUSAND FIVE HUNDRED DOLLARS ($2,387,500.00) as of the date of this Agreement plus interest, costs, fees and expenses, which amount is immediately due and payable (the "Indebtedness"). Interest shall continue to accrue pursuant to the Note at the Default Rate specified therein. In addition, as set forth in the Transaction Documents the Secured Party is entitled to add to the indebtedness all of Secured Party's costs, fees and expenses including reasonable attorneys' fees incurred in enforcing its rights.

2.      Rules of Construction. All references to provisions from Transaction Agreements are incorporated as if such provisions were fully set forth in this Agreement, and include all necessary definitions and related provisions set forth in the Transaction Agreements. All capitalized terms not separately defined in this Agreement shall have the meanings set forth in the Transaction Agreements. All references to the Uniform Commercial Code are deemed to be references to the Uniform Commercial Code in effect in the State of New York as of the date of this Agreement (the "UCC") unless otherwise specifically indicated. Unless the context in which it is used otherwise clearly requires, all references to days, weeks and months mean calendar days, weeks and months.

3.      Compliance Period. Notwithstanding the Default acknowledged in Paragraph 1, the Secured Party shall forbear and refrain from exercising its Secured Party's rights and remedies under the Transaction Document for a period of time which shall expire on May 18, 2010, (the "Compliance Period"). During the Compliance Period, the Debtor shall have the right to either (i) pay to the Secured Party the entire amount due under the accelerated Note ("Indebtedness") or (ii) present to the Secured Party for its consideration, a written, executed agreement that provides for the repayment of the Indebtedness, or the sale of the Collateral ("Third Party Agreement") on terms acceptable to the Secured Party. The Secured Party may approve or reject any such Third Party Agreement is its sole and absolute discretion, for any reason or no reason, and shall provide Debtor with written notice of its decision within five (5) business days of receipt of a Third Party Agreement. In the event that the Debtor presents a Third Party Agreement to the Secured Party within the Compliance Period and the Secured Party accepts such Third Party Agreement by providing written notice of acceptance as set forth herein ("Accepted Third Party Agreement"), then the Debtor must close on the Accepted Third Party Agreement on or before June 18, 2010 (the "Extended Compliance Period"). Adherence to the time periods set forth in this provision are a material inducement for the Secured Party to enter into this Agreement, and time is of the essence with respect to the Compliance Period and the Extended Compliance Period. Any Third Party Agreement must, by its terms be contingent upon the approval in writing of the Secured Party in accordance with this Paragraph 3 of this Agreement. Debtor shall provide sufficient notice of the closing of any Accepted Third Party Agreement, and the Secured Party shall be entitled to be present at closing.

4. Foreclosure Without Further Notice. In the event the Debtor:(i) does not either pay the Indebtedness or produce an Accepted Third Party Agreement during the Compliance Period; or (ii) In the event that there is an Extended Compliance Period, the Debtor fails close on the Accepted Third Party Agreement within the Extended Compliance Period or; (iii) if the Debtor fails to make payment of the Indebtedness within any period set forth for payment in the Accepted Third Party Agreement, then the Secured Party may, without any further notice or obligation to the Debtor, immediately and finally foreclose on the Collateral in accordance with this Agreement.

5. Consent of Debtor; Release of Escrowed Documents. Upon the expiration of the Compliance Period, or the Extended Compliance Period, as the case may be, the Secured Party shall have the right to possess and retain the Collateral in accordance with the terms set forth herein, the Transaction Agreements (as modified herein), and pursuant to the provisions of Section 962 of Article 9 of the UCC. At such time the Debtor shall immediately assemble and make available to Secured Party for its immediate possession the Collateral, including, without limitation, the tangible assets, (including the contents of the trailer and contents of the warehouse, which included the interior of CBGB that had been broken down, tee-shirts, memorabilia, computers, and office furniture), and the intangible assets set forth in the Transaction Agreements and the schedules appended thereto, and all items relating thereto, including, but not limited to, computer files, records concerning the Collateral, contracts, books and records and other information that may be of assistance to Secured Party in its management and liquidation of the Collateral. Simultaneously with the execution of this Agreement, the Debtor shall execute a letter, in the form attached as <u>Exhibit A</u>, irrevocably directing the Escrow Agent to release the Escrowed Documents to the Secured Party ("<u>Letter of Direction</u>"). The Letter of Direction shall be held in escrow by Steiner & Kostyn, LLP, the attorney for the Secured Party. The Letter of Direction shall be released by Steiner & Kostyn, LLP and the directions contained therein implemented at the end of the Compliance Period, or Extended Compliance Period, as the case may be, unless full payment is made to the Secured Party of all amounts due under the Note.

6. Waiver. The Debtor agrees that it has received notice sufficient for compliance with Sections 9-620 and 9-621 of the UCC and, in the alternative, hereby expressly (a) waives (i) any requirement for receipt of such notice and any right to notification of sale, transfer, conveyance or surrender of the Collateral pursuant to Sections 9-620 and 9-621 of the UCC or otherwise, and (ii) any remedies, rights, defenses or actions the Debtor might have as a result of failure to have received such notice; (b) waives the right to redeem the Collateral under Section 9-623 of the UCC or otherwise; (c) waives any right to object to the sale, transfer, conveyance or surrender of the Collateral pursuant to Section 9-620 of the UCC or otherwise; (d) waives any obligation of the Secured Party to dispose of the Collateral; (e) waives any other right, whether legal or equitable, which the Debtor may possess in and relating to the Collateral; and (f) agrees that the transactions contemplated herein are commercially reasonable. The Debtor acknowledges and agrees that the waivers set forth in this Section and elsewhere in this Agreement constitutes material consideration for the agreement of the Secured Party to execute and deliver this Agreement.

7.   Segregation and Delivery of Collateral by Debtor. The Debtor shall hold for the benefit of, and in trust for, the Secured Party all income, including all income received at any time by or on behalf of the Debtor from a third party, with respect to all Collateral, whether received before or after the expiration of the Compliance Period, except for any amounts required to pay all Necessary Operating Expenses (as defined below) in the event sufficient funds are not otherwise available. All such income (with the exception of any Necessary Operating Expenses excluded pursuant to the preceding sentence) constitutes Collateral and must be remitted immediately by the Debtor or such third party directly to the Secured Party and must not be commingled with other property of the Debtor or any Affiliate of the Debtor. "Necessary Operating Expenses" shall mean any and all amounts required to pay costs of the Company with respect to rent, insurance and warehousing (including trailers).

8.   Representations, Warranties, Covenants and Further Acknowledgments. All representations made by the Debtor in this Agreement shall be true with respect to all periods through and including the last day of the Compliance Period.

9.   Validity. The Transaction Agreements constitute legal, valid and binding agreements and obligations of the Debtor, enforceable in accordance with their terms, and the Secured Party are presently entitled to exercise all enforcement rights and remedies under the Transaction Agreements.

10.   No Dispute. The Debtor agrees that it does not and shall not dispute the validity, priority, enforceability or extent of the Secured Party's liens and security interests in any part of the Collateral, nor the Secured Party's entitlement to the immediate possession of the Collateral, in any judicial, administrative or other proceeding.

11.   Authorization. The Debtor has the power to and is duly authorized to enter into, deliver and perform this Agreement.

12.   No Extrinsic Representations. The Debtor is not acting or relying on any representations, understandings or agreements not expressly set forth in this Agreement.

13.   No Other Claim on Collateral. Debtor represents and affirms that no party other than the Debtor and the Secured Party has any claim or interest in the Collateral, and that, upon execution hereof, subject to the Compliance Period, the Secured Party shall have full legal title to the Collateral and are entitled to the immediate transfer by the Debtor to the Secured Party of the Collateral free and clear of any and all liens, claims, interests and encumbrances.

14.   Additional Consideration. As further consideration for this Agreement, the parties hereby agree that, in the event of a sale of the assets or membership interest in CBGB Holdings, LLC (a "Sale"), then, after repayment by Debtor of the Indebtedness, the Secured Party shall be entitled to an amount equal to 25% of the remaining net

proceeds from the Sale (if any), up to an amount which shall not exceed $250,000 in aggregate.

15. Waiver/Release of Claims by Debtor. Effective upon the execution of this Agreement, the Debtor and its respective officers, members and directors (collectively, the "Debtor Party"), hereby (a) irrevocably and unconditionally releases and forever discharges the Secured Party and its fiduciaries, agents, professionals, employees, attorneys, representatives, successors and assigns, and each of them (collectively, the "Secured Indemnitees"), from any and all rights, claims, remedies and causes of action relating to the Notice of Default and this Agreement whether known or unknown, liquidated or unliquidated, contingent or absolute, accrued or unaccrued, matured or unmatured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise (the "Released Claims") and (b) covenant not to sue any of the Secured Indemnitees in connection with any Released Claims. Notwithstanding anything herein to the contrary, nothing herein shall constitute a waiver or release by the Debtor in favor of any of the Secured Indemnitees of any of the terms and conditions of this Agreement.

16. Notice. All notices given hereunder ("Notice") shall be by reputable overnight courier, such as Federal Express, and by facsimile, and shall be deemed given when sent. The addresses for notice hereunder (unless Notice is given of a change of address hereunder) are as follows:

| | |
|---|---|
| To the Secured Party: | The Estate of Hillel Kristal<br>c/o Brett Green<br>500 Strawtown Road<br>West Nyack, NY 10994<br>Facsimile |
| And | The Estate of Hillel Kristal<br>c/o Lisa Kristal Burgman<br>57 Second Ave. Apt. 33<br>New York, NY 10003 |
| With a copy to: | Steiner & Kostyn LLP<br>2 William Street Suite 302<br>White Plains, NY 10601<br>Facsimile 914.328.8648 |
| To the Debtor: | CBGB Holdings LLC<br>c/o Kismet Media Group<br>30 Lincoln Plaza, Suite 20T<br>New York, NY 10023<br>Facsimile 212.842.2166<br>Attention: James Blueweiss<br>Robert Williams |

10-13130-smb    Doc 56    Filed 11/18/10    Entered 11/18/10 17:24:35    Main Document
Pg 6 of 9

17. Assurance of No Assignment. Each Party represents that it owns and has not assigned or transferred to any other Person or entity any or all of its rights, property interests and claims as are being altered, transferred or otherwise affected by this Agreement.

18. Authority. Each of the Parties represents and warrants to each other Party as of the date hereof that: (a) it has the requisite authority and power to enter into this Agreement and the transactions contemplated hereby, and (b) the execution and delivery of this Agreement has been duly authorized and constitutes its legal, valid and binding obligation, enforceable against it in accordance with its terms.

19. Covenant of Further Assurances. The Parties covenant and agree that, from and after the execution and delivery of this Agreement, they shall, from time to time, execute, deliver and file any and all documents and instruments as are reasonably necessary or requested by any other Party to implement the terms of this Agreement, except that the Parties agree that this paragraph 18 is not intended to limit the Secured Party's unilateral right to withhold consent as set forth in paragraph 3 of this Agreement. The Debtor further covenants and agrees to provide full access to all books and records related to the Collateral for purposes of effectuating the agreements contained herein. The Debtor further covenants that it shall not include any of the Collateral in any schedules of assets to be filed in connection with any subsequent petition filed by or against the Debtor under Title 11 of the United States Code or any similar proceeding under applicable state or federal law.

20. Entire Agreement. This Agreement represents the final agreement among the Parties with respect to its subject matter, and may not be contradicted by evidence of prior or contemporaneous oral agreements among the Parties. There are no oral agreements among the Parties with respect to the subject matter of this Agreement, including the release and waiver provisions, or the Transaction Agreements, including, without limitation, executing, within two days of delivery thereof, any and all Powers of Attorney necessary to transfer and assign any and all intellectual property rights in accordance with the terms set forth in this Agreement.

21. Successors and Assigns. This Agreement shall: (a) be binding on the Parties and their respective successors and assigns; and (b) inure to the benefit of the Parties and their respective successors and assigns.

22. Governing Law. This Agreement shall be governed by and construed in accordance with the law of the State of New York applicable to contracts made and to be performed within such state without giving effect to any choice of law or conflict of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York.

23. Amendment, Waiver. This Agreement may be amended, modified or waived only in a writing signed by each of the Parties.

24. Good Faith and Consultation with Legal Counsel. This Agreement shall be deemed to have jointly drafted by the Secured Party and the Debtor, and each has had access to and the opportunity to consult with independent legal counsel. Each of the Parties acknowledges having read all of the terms of this Agreement and enters into the Agreement voluntarily and without duress.

25. Severability. In the event that any one or more of the provisions of this Agreement shall be for any reason invalid, illegal or unenforceable in any respect, the invalidity, illegality, or unenforceability shall not affect any other provision of the Agreement and such invalid, illegal or unenforceable provision shall be treated as if it had never been contained herein.

26. Revival of Obligations. Notwithstanding any other provision of this Agreement, and in the event Debtor becomes a debtor in a case under Title 11 of the United States Code (the "Bankruptcy Code") subject to Debtor's rights under the Bankruptcy Code, in the event that the transfer of the Collateral, or any part thereof, is subsequently invalidated, declared to be a fraudulent or preferential transfer, set aside and/or required to be repaid to a trustee, receiver or any other party, whether under any bankruptcy law, state or federal law, common law or equitable cause, or otherwise, then the Obligations under the Transaction Agreements, to the extent they remain unsatisfied, shall be revived and reinstated and shall continue in full force and effect until the Secured Party has received payment in full on such obligations.

27. Counterparts. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and together constitute one and the same instrument. To facilitate execution of this Agreement, the parties may exchange by facsimile or electronic mail (e-mail) counterparts of this signature page, which shall be effective as original signature pages for all purposes.

[SIGNATURE PAGE TO FOLLOW]

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be duly executed on their behalf by their duly authorized officers as of the day and year first written above.

CBGB HOLDINGS LLC                    ESTATE OF HILLEL KRISTAL

By: _____          By: _____
Name: James Blueweiss
Title: President

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be duly executed on their behalf by their duly authorized officers as of the day and year first written above.

CBGB HOLDINGS LLC

By: _____
Name: James Blueweiss
Title: President

ESTATE OF HILLEL KRISTAL

By: _____[signature]_____

Co-Executor
3/18/2010